## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

PETER C.,

       *Plaintiff,*

*v.*

COMMISSIONER OF
SOCIAL SECURITY,

       *Defendant.*

_____/

Case No. 1:24-cv-11026

Patricia T. Morris
United States Magistrate Judge

## MEMORANDUM OPINION AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 9, 11)

## I.    CONCLUSION

For the reasons set forth below, Plaintiff Peter C's Motion for Summary Judgment is **DENIED** (ECF No. 9), Defendant the Commissioner of Social Security's Motion for Summary Judgment is **GRANTED** (ECF No. 11), and the final decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**.

## II.    ANALYSIS

### A.    Introduction and Procedural History

Plaintiff's applications for Title II and Title XVI disability were filed on June 24, 2021. (ECF No. 4-1, PageID.686, 693). Plaintiff alleged he became disabled on August 5, 2020. (*Id.* at PageID.686, 693). The Commissioner denied the

1

applications initially on March 8, 2022, and on reconsideration on July 21, 2022. (*Id.* at PageID.465–466, 536–537).  Plaintiff requested a hearing before an ALJ which took place on March 2, 2023.  (*Id.* at PageID.464–497).  The ALJ issued a decision on May 8, 2023, finding that Plaintiff was not disabled.  (*Id.* at PageID.69–87).  And the Appeals Council denied review on February 22, 2024.  (*Id.* at PageID.52–55).

Following the Appeals Council's decision, Plaintiff sought judicial review on April 18, 2024.  (ECF No. 1).  The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment on all post-judgment matters."  (ECF No. 7).  The parties have filed cross-motions for summary judgment (ECF Nos. 9, 11) and Plaintiff did not file a timely response.

**B.      Standard of Review**

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  "[T]he threshold for

2

such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

(i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 3336 F.3d 469, 474 (6th Cir. 2003).  The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the

relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 4-1, PageID.69–80). At Step One, the ALJ found Plaintiff met the insured state requirements through December 31, 2025, and that Plaintiff had not engaged in substantial gainful activity ("SGA") since August 5, 2020, the alleged onset date. (*Id.* at PageID.47). At Step Two, the ALJ found the following impairments severe: seizure disorder, compression fractures thoracic and lumbar spine, degenerative disc disease cervical and lumbar spine, and alcohol abuse. (*Id.*). At Step Three, she found that none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing. (*Id.* at PageID.73–75).

Next, the ALJ found that Plaintiff had the residual functional capacity

5

("RFC") to perform light work as defined in 20 C.F.R. 404.1529 and 416.929 and SSR 16-3p but with additional limitations. (*Id.* at PageID.75). The ALJ found that Plaintiff could perform light work

> except stand and/or walk 4 hours in an 8 hour day; occasionally climb ramps/stairs, balance, kneel, stoop, and crouch, no climbing ladders, ropes, or scaffolds or crawling; avoid concentrated exposure to extreme cold, vibration, hazardous machinery, and unprotected heights; frequently handle/finger with the bilateral upper extremities and occasional overhead reaching with the bilateral upper extremities.

(*Id.*).

At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.78). Finally at Step Five, the ALJ determined that Plaintiff could perform a significant number of jobs in the economy, which included assembler, inspector, and packager. (*Id.* at PageID.79). Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, at any time from August 5, 2020, through the date of the decision. (*Id.* at PageID.79–80).

### E.    Administrative Record

This case involves a single issue: whether the ALJ's failure to include Plaintiff's use of a cane in the RFC is supported by substantial evidence. Although the entire record has been reviewed by the Undersigned, references to the record will be limited to this single issue as part of the analysis of this issue below.

6

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B) (2012).  The newly promulgated regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources.

An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed Psychologist, which includes:

    (i)    A licensed or certified psychologist at the independent practice level; or

    (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only.  For this source, qualified means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only [];

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice []; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice [].

20 C.F.R. § 404.1502(a) (2021).  A medical source is

an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d).  In contrast, a nonmedical source is "a source of evidence who is not a medical source."  *Id.* § 404.1502(e).  "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy."  *Id.*

The Social Security Administration ("SSA") "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." *Id.* § 404.1520c(a). "The most important factors [the SSA] consider[s] when [it] evaluate[s] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.*

The first factor is "supportability." For this factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with [the]

claimant[.]" *Id*. § 404.1520c(c)(3).  This factor will include the analysis of:

(i)    Length of the treatment relationship.  The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)    Frequency of examinations.  The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii)    Purpose of the treatment relationship.  The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)    Extent of the treatment relationship.  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)    Examining relationship.  A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder[.]

*Id.*

The fourth factor of the SSA's analysis is "specialization."  In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

10

*Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record.

*Id.* § 404.1520c(b)(1).

11

Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2). As such, the SSA

will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision. [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors[] for those medical opinions or prior

12

administrative medical findings in [the claimant's] determination or decision." *Id.*

§ 404.1520c(b)(3).  The regulations clarify that the SSA is "not required to articulate

how [it] considered evidence from non-medical sources using the requirements of

paragraphs (a) through (c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider

"evidence that is inherently neither valuable nor persuasive" and "will not provide

any analysis about how [it] considered such evidence in [its] determination or

decision, even under § 404.1520c." *Id.* § 404.1520b(c).  The regulations categorize

evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other

governmental and nongovernmental entities;" "[d]isability examiner findings,"

meaning "[f]indings made by a State agency disability examiner made at a previous

level of adjudication about a medical issue, vocational issue, or the ultimate issue

about whether [the claimant is] disabled;" and "[s]tatements on issues reserved to

the Commissioner[,]" including

> (i)    Statements that [the claimant] [is] or [is] not disabled, blind, able
>        to work, or able to perform regular or continuing work;
>
> (ii)   Statements about whether or not [the claimant's] impairment(s)
>        meets or medically equals any listing in the Listing of
>        Impairments[];
>
> (iii)  Statements about what [the claimant's] residual functional
>        capacity is using [the SSA's] programmatic terms about the
>        functional exertional levels [] instead of descriptions about [the
>        claimant's] functional abilities and limitations[];

(iv)    Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work[];

(v)     Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule[]; and

(vi)    Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review[.]

*Id.* § 404.1520b(c).

The regulations also provide that

[b]ecause a decision by any other governmental and nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504.   Therefore, the SSA "will not provide any analysis in its determination or decision about a decision made by any other governmental or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to benefits." *Id.*  The SSA will, however, "consider all of the supporting evidence underlying the other governmental or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim[.]" *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f).  Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." *Id.*  Further, "[s]igns must be shown by

14

medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* § 404.1502(g). Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques[,]" and "diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as x-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain.

> In considering whether [the claimant is] disabled, [the SSA] will consider all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The SSA] will consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work[.]

*Id.* § 404.1529(a). But the SSA clarified that

> statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be

expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence about [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.* § 404.1529(a).

Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.* § 404.1529(a). The SSA clarified that it will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it] will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3). This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or aggravate [the claimant's] symptoms, what medications, treatments or other

16

methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of the claimant's symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the Claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons[.]

*Id.* The regulations establish that "[f]actors relevant to [a claimant's] symptoms, such as pain, which [it] will consider include []:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get benefits, [the claimant] must follow treatment prescribed by [his or her] medical

source(s) if this treatment is expected to restore [his or her] ability to work." *Id.* §

404.1530(a).  Stated differently, "[i]f [the claimant does] not follow the prescribed

treatment without a good reason, [the SSA will] not find [the claimant] disabled or,

if [the claimant is] already receiving benefits, [the SSA will] stop paying . . .

benefits." *Id.* § 404.1530(b).  Acceptable (or "good") reasons for failure to follow

prescribed treatment include:

> (1)   The specific medical treatment is contrary to the
>        established teaching and tenets of [the claimant's]
>        religion;
>
> (2)   The prescribed treatment would be cataract surgery for
>        one eye, when there is an impairment of the other eye
>        resulting in a severe loss of vision and is not subject to
>        improvement through treatment;
>
> (3)   Surgery was previously performed with unsuccessful
>        results and the same surgery is again being recommended
>        for the same impairment;
>
> (4)   The treatment because of its magnitude (e.g. open heart
>        surgery), unusual nature (e.g., organ transplant), or other
>        reason is very risky for [the claimant]; or
>
> (5)   The treatment involves amputation of an extremity, or
>        major part of an extremity.

*Id.* § 404.1530(c).

## G.   Argument and Analysis

This case involves a single issue: whether the ALJ's failure to include

Plaintiff's use of a cane in the RFC is supported by substantial evidence.  Plaintiff

contends that his "use of a cane is documented throughout the record" but that "[d]espite the record supporting that Plaintiff relied on the cane at times, the ALJ did not include a cane in the RFC finding." (ECF No. 9, PageID.1251). Plaintiff also argues that the ALJ "incorrectly noted that Dr. [Harold] Nims stated that Plaintiff was able to stand and walk without a cane" and "failed to acknowledge instances of Plaintiff's abnormal gait." (*Id.* at PageID.1262). Therefore, Plaintiff seeks a remand so the ALJ can properly evaluate his need for a cane.

In considering the opinion of the State agency consultative examiner, Dr. Harold Nims, the ALJ found that Plaintiff "is able to stand and walk without a cane" and noted that she "finds the opinion persuasive for no need for a cane but unpersuasive in that a mild impairment for work functions is not clearly defined." (ECF No. 4-1, PageID.77).

Dr. Nims documented his physical examination of Plaintiff as well as his opinions on Plaintiff's physical health and level of impairment. Dr. Nims concluded that Plaintiff suffers from "[c]hronic low back pain with radiation to the knee with radiologic evidence of multiple compression fractures in the thoracic and lumbar spine[,]" "[b]ilateral shoulder pain with limited motion of undetermined etiology[,]" and "[q]uestionable history of 1 seizure in the past." (*Id.* at PageID.909). Dr. Nims noted that Plaintiff's "gait is somewhat slow, but otherwise normal. He is using a single prong cane that he obtained without a prescription one year ago." (*Id.* at

PageID.908).  Dr. Nims summarized:

> [Plaintiff] is a 47-year-old male whose upper extremities . . . ha[ve] some mild limitation in shoulder motion bilaterally.  In lower extremities, he has very limited motion in the lumbar spine and problems do[i]ng orthopedic maneuvers.  He is able to stand without the cane, but does use a cane for walking.
>
> [Plaintiff's] ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects is at least mildly impaired[.]

(*Id.* at PageID.910).

As stated above, the sole issue is whether the ALJ erred in failing to incorporate Plaintiff's use of a cane into the RFC.  Importantly, "[t]he ALJ is not required to incorporate use of a cane into the RFC unless the cane is medically required, in which case the cane is considered a limitation on a claimant's ability to work."  *Rodgers-Eaches v. Comm'r of Soc. Sec.*, No. 1:20-cv-69, 2021 WL 164254, at *5 (S.D. Ohio Jan. 19, 2021).  SSR 96-9p provides the criteria for determining whether a cane is medically required:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  The adjudicator must always consider the particular facts of a case.  For example, if a medically required hand-held device is needed only for prolonged ambulation, walking on uneven terrain, or ascending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

The burden to prove that a cane is medically required rests with the Plaintiff. *Rodgers-Eaches*, at *5.

First, as the Commissioner acknowledges, although the ALJ indicated that Dr. Nims opined that Plaintiff had "no need for a cane," Dr. Nims instead merely noted that Plaintiff could stand without a cane but used a cane to walk. Dr. Nims did not make a medical finding either way, he simply noted that Plaintiff did not use a cane to stand but did use one for walking. Thus, the ALJ was imprecise in describing Dr. Nims' findings. However, the question for this Court is whether the ALJ's misstatement renders the ALJ's decision unsupported by substantial evidence. I find that it does not.

Although Plaintiff cites to several references in the record of Plaintiff's use of a cane, "indications in the medical records that Plaintiff was using a cane [are] insufficient to establish that the cane was medically required." *Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, at *12 (N.D. Ohio June 7, 2018), *report and recommendation adopted*, 2017 WL 2720332 (N.D. Ohio June 23, 2017). Plaintiff has not pointed to any medical documentation indicating his use of a cane is medically necessary nor is there any medical description of the circumstances for which a cane is needed as required by SSR 96-9p. Thus, any alleged error on the part of the ALJ to better evaluate or explain her findings regarding use of a cane is at most harmless error. *Williams v. Comm'r of Soc. Sec.*, No. 1:20-cv-40, 2021 WL

21

4025518, at * 8 (S.D. Ohio Sept. 3, 2021).

Moreover, the mere fact that Plaintiff's gait was, at times, observed to be "disturbed" does not undermine this conclusion.   The only medical opinion of record, *i.e.*, Dr. Nims, stated that Plaintiff's gait was normal.   Even if Dr. Nims had found Plaintiff's gait to be less than normal, that alone does not come close to medical evidence that a cane was medically necessary under the standards delineated above.   Therefore, Plaintiff cannot, on the record before the ALJ, meet his burden to show that use of a cane was medically necessary; thus, remand would be futile.

As unfortunate as Plaintiff's circumstances are, I find that the ALJ's decision is supported by substantial evidence and accordingly must be affirmed.

## III.   **ORDER**

For these reasons, I conclude that substantial evidence supports the Commissioner's denial of benefits.   Thus, Plaintiff's motion (ECF No. 9) is **DENIED**, the Commissioner's motion (ECF No. 11) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

Date: December 11, 2024                    S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge